**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 19 CR 780-2 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| KENNETH KUZELKA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

The Court grants in part and denies in part third-party Laura Kuzelka and Harold Blackburn's motions to quash [146, 148, 149]. The Court orders Blackburn to produce the bank statements found at Bates Numbers 000001-17; 000038-65; and 000084-96 to counsel for the government and to Kenneth Kuzelka by 1/14/2022. See Statement for further details.

## STATEMENT

On December 18, 2019, Defendants Dora Kuzelka, Kenneth Kuzelka, Kari Kuzelka, Keith Kuzelka, and Sergio Badani were charged in a twelve-count indictment with alien harboring and a pattern and practice of unlawful employment of aliens at the Kuzelkas' family-owned business, KSO Metalfab, Incorporated.[1] In connection with this case, Kenneth served a subpoena upon Harold Blackburn, CPA, a non-party, which sought documents related to the personal business records of Keith and his wife Laura Kuzelka, also a non-party. After Blackburn did not produce the requested records, Kenneth filed a motion to compel him to comply with the subpoena. Doc. 87. On December 15, 2020, the Court denied the motion without prejudice but allowed Kenneth to serve a more narrowly drawn subpoena. Doc. 112. On February 19, 2021, Kenneth served a second subpoena on Blackburn that seeks communications between Blackburn and Keith or Laura regarding the funding and formation of K4 and NCK Corp. between 2017 and 2019, as well as any financial records regarding the funding and formation of K4 and NCK Corp. between 2017 through 2019.[2] On June 24, 2021, Blackburn agreed to produce the requested documents for the K4 corporation. The parties could not resolve their issues regarding the portion of the subpoena seeking NCK documents, prompting Laura and Blackburn to bring motions to quash the February 19, 2021 subpoena as to NCK.

---

[1] The Court will refer to the Kuzelka co-defendants by their first names individually and collectively as the Kuzelkas. Keith pleaded guilty to Count 12 of the indictment, and the Court sentenced him to a one-year term of probation. Badani pleaded guilty to Count 1 of the indictment, and the Court sentenced him to a two-year term of probation.

[2] Although the subpoena seeks documents related to NCK Corp., it appears that this reference should instead be to NCK Properties, Inc., of which Laura is the President and majority shareholder.

Under Federal Rule of Criminal Procedure 17(c), a district court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). In *United States v. Nixon*, the Supreme Court held that in order to require production prior to trial, the moving party must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699–700 (1974) (footnote omitted). Thus, to obtain the production of documents, the movant must request relevant, admissible, and specific evidence. *United States v. Smith*, No. 19 CR 669, 2020 WL 4934990, at *2 (N.D. Ill. Aug. 23, 2020) (citing *Nixon*, 418 U.S. at 700). Further, "Rule 17(c) is not a discovery device to allow criminal defendants to blindly comb through government records in a futile effort to find a defense to a criminal charge. Instead, it allows only for the gathering of specifically identified documents which a defendant knows to contain relevant evidence to an admissible issue at trial." *United States v. Tokash*, 282 F.3d 962, 971 (7th Cir. 2002).

Although Blackburn and Laura use the *Nixon* standard in seeking to quash the subpoena, in his response, Kenneth maintains that the Court should use a less stringent standard to analyze third party subpoenas, citing to *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). In *Tucker*, the court determined that the "less-stringent standard [the courts] apply requires, as a threshold matter, the element of materiality. Under this standard, Rule 17(c) subpoenas are not to be used as broad discovery devices, but must be reasonably targeted to ensure the production of material evidence." *Id.* at 66. Indeed, the *Nixon* Court found it unnecessary to address whether a lower standard should apply to a subpoena directed to a third party rather than to the government, leaving this an open question. 418 U.S. at 699 n.12. But the Seventh Circuit has applied the *Nixon* standard to a third-party subpoena, *Tokash*, 282 F.3d 962, 971 (7th Cir. 2002), and other courts in the Second Circuit have explicitly disagreed with *Tucker*'s analysis, *see United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (noting that the Second Circuit has "applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant"); *United States v. Barnes*, No. S9 04 CR 186 SCR, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008) ("Though the *Tucker* Court found this relaxed standard appropriate, it is not the prevailing law. Indeed, all district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense."); *see also United States v. Naggs*, No. 18-CR-130, 2020 WL 5105783, at *2 (E.D. Wis. Aug. 31, 2020) ("More to the point, courts in this district have applied the *Nixon* standard to third-party subpoenas, as well as multiple courts of appeal. I see no compelling reason to stray from the weight of this authority and will address the defendants' motion under the *Nixon* standard." (citations omitted)). Therefore, the Court finds it appropriate to address Laura and Blackburn's motions under the *Nixon* standard although it would reach the same result under Kenneth's advocated lower standard.

Here, Blackburn and Laura argue that Kenneth fails to provide any facts sufficient to satisfy the *Nixon* test because he has not shown that the documents are relevant and instead is engaging in a fishing expedition. Kenneth's subpoena requests: (1) "[a]ny and all communications between Howard Blackburn and Keith and/or Laura Kuzelka regarding the funding and formation of . . . NCK Corp., between 2017 through 2019"; and (2) "[a]ny and all financial records, including but not limited to, profit and loss statements, bank account records, invoices, tax filings and other corporate documents regarding the funding and formation of . . . NCK Corp., between 2017 through 2019." Doc. 146-1 at 5. The documents in question, specifically bank statements, NCK's tax returns from 2017 and 2018, and one email between Blackburn and Laura, have now been provided to the Court for *ex parte* in camera review.

Kenneth asserts that the records he seeks may be relevant to Keith's credibility and truthfulness because he has a good faith belief that Keith misappropriated funds from KSO and put them into NCK for his own benefit. And Kenneth believes Keith will, in fact, testify in the government's case-in-chief. Laura responds that NCK is solely under her direction, defeating any possible link between NCK and Keith. Initially, because Keith worked at KSO and Laura is his wife, a basis exists for finding NCK's finances relevant to Keith's actions in this case and his credibility. Further, Kenneth's subpoena does not qualify as a general fishing expedition, as Kenneth had a good faith belief that these records would contain relevant evidence to an admissible issue at trial. *Nixon*, 418 U.S. at 700. Based on the Court's in camera review, the Court finds that the tax returns and email correspondence have no impeachment value or other relevance because they are unrelated to KSO, Kenneth, or Keith. *See, e.g.*, *City of Greenville v. Syngenta Crop Prot., Inc.*, No. 11-MC-10, 2011 WL 5118601, at *4 (C.D. Ill. Oct. 27, 2011) ("Contacts with Syngenta unrelated to Atrazine are not relevant or likely to lead to relevant evidence."). But the Court's review of the bank statements demonstrates they are relevant and may provide a basis for impeaching Keith's testimony. Impeachment materials are properly subject to a Rule 17(c) subpoena if and when the witness in question testifies at trial. *United States v. Messino*, 882 F. Supp. 115, 116 (N.D. Ill. 1995). It appears likely that Keith will testify at trial, given that he has cooperated with the government against his siblings and mother by providing a significant amount of information used in obtaining a search warrant for KSO, and the bank statements could paint a different portrayal of Keith should he testify. Though "[t]he need for evidence to impeach witnesses is generally deemed insufficient to require production in advance of trial," *Nixon*, 418 U.S. at 701, a defendant can still employ the subpoena power of Rule 17 to secure evidence at trial, including to secure impeaching material, *Messino*, 882 F. Supp. at 116. Trial is set for May 9, 2022, and the parties are working towards that date. Keith's plea agreement included his agreement to "fully and truthfully cooperate in any matter in which he is called upon" to do so, Doc. 142 at 9, and, in connection with Keith's sentencing, the government stated that it anticipates Keith's continued cooperation in this case, including by providing testimony at the trial of his co-defendants. Doc. 156 at 2. Given the government's stated intention to call Keith at trial and the fact that Blackburn and Laura do not raise an argument that turning over the documents before trial would be premature, the Court sees no basis to withhold the bank statements until trial at this point. Therefore, the Court grants in part and denies in part the motions to quash [146, 149].

Dated: December 6, 2021                                  /s/__Sara L. Ellis_____